14609

MATHESON *ET AL.* v. McCORMAC *ET AL*

(195 S. E., 122)

94

November,  1937.

*Mr. J. J. Evans,* for appellant, ▉

*Messrs. Tison & Miller,* for respondents.

January 28, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

On February 2, 1934, there lived in Marlboro County a man we assume of about middle age, Alexander J. Matheson, with his wife and six children of ages from three to eighteen years. He had been married twenty years, was a life-long resident of the county, as was his wife. He had accumulated considerable property and owned a lucrative gasoline and oil business. Without previous notice or warning he left the county on this date with a young woman and neither has since been heard of. Some time before leaving he sold a wholesale grocery business that he owned and other property, and over a period of time had an employee to change small bills into large ones in the aggregate of four to·five thousand dollars. That his leaving was well planned and that he carried with him considerable currency appears clear.

About a month after his disappearance his wife brought a suit against him, alleging his abandonment, her dependence and the dependence of her children upon him, the necessity for a continuation of the business by one legally constituted, and demanded support for the family and the appointment of a Receiver. Service was had on one L. E. Hassinger, an employee of the husband for the past fourteen years in the conduct of his oil business, the proof of service being as follows: "Personally before me comes W. L. Fletcher, who being duly sworn says that he is a rural

policeman for Marlboro County, S. C.; that he served the summons and complaint in the above entitled matter on Alexander J. Matheson in Bennettsville, S. C., on March 1, 1934, by leaving copies of the same at his place of business in said town with L. E. Hassinger; that he knows the person so served to be the defendant in this action, and that he is not a party to the suit."

No attachment was attempted, no order for publication of the summons ever passed, nor was service ever attempted save as shown. Thereafter an order in the cause was passed bringing in the children as parties plaintiffs, and service of the amended summons and complaint made on Hassinger as was the original, the returns of service being identical except for the date and the party serving. At the time of second service, however, a Receiver had been appointed and Hassinger was working for him though doing the same work formerly done for Matheson.

The Receiver ran the business for over a year when, by a final order, the cause having proceeded by default, a lump sum judgment was awarded by the Court to the wife and children, and the property of the defendant vested in them in fee in satisfaction of the judgments practically in the proportion provided by the statute of distribution. The wife was awarded the custody of all the children. A separate corporation was set up from the funds of the defendant to run the oil business, ownership therein being in the same proportion, and it has since been run successfully.

On September 15, 1937, the present action was begun whereby the oil business and certain realty connected with it as an integral part as it is stated is sought to be sold to C. L. McCormac and L. E. Hassinger; all being property acquired by the final order in the cause against the husband, Matheson. McCormac runs the principal filling station so vested in plaintiffs, sells over 60 per cent. of the total gross gallonage of plaintiffs' business, 85 per cent. of which is sold to Florida trucks, and is a business personal to Mc-Cormac, and would be lost if McCormac severed his rela-

tions. It appears conclusively that the business of plaintiffs is a hazardous one, highly competitive and of a kind that may not be expected to be run successfully by women and children over any considerable time; that the loss of Mr. McCormac would, figuratively, cut the heart out of the business, cause a considerable decrease in the value of the physical property, and reduce by almost two-thirds its total volume. McCormac is offered gasoline by other companies at the same price paid by Matheson and is naturally going to sever his relations with them if the proposed sale is not consummated—a sale manifestly to the advantage of the Matheson family.

Plaintiffs desire to sell, defendants to buy, and the proposed sale is advantageous, if not, in fact, necessary. But defendants challenge the title of plaintiffs in the property because of defects alleged in the former proceedings against the husband, Matheson, by thirteen exceptions, which may be generally grouped as follows:

First. Technical objections to former judicial proceedings relating to the order of reference, its distribution of the property, and its investment.

Second. The right of the Court in such a case to give a lump sum judgment, or settlement in gross.

Third. Objection to the jurisdiction of the Court because of no service of summons on defendant sufficient to bring him, or his property, before the Court.

In passing on the case as above set out, all exceptions of the appellant will be duly considered, though not each exception separately.

There is no legal necessity for the dating of an order of reference. The fact that there was such an order and that all acted on it must be admitted. While the order was passed before the one bringing in additional parties, it was solely for the taking of testimony and all parties acted under it, and presented their cause on the testimony so taken. In no way is it shown that their rights were not fully protected; and those later in the suit,

.if there at all, could only be as claimants under the previous order in the original cause calling them in.

The exception that the minors' money was invested in a business hazardous in its operation and not in accordance with Section 9049 *et seq.*, Code 1932, does not arise because no loss has been shown and consequently no liability on the part of any one for damages. In fact, the present suit is to change the investment, though for reasons hereafter appearing *the money of the minors* was not invested as alleged in this exception. Nor does it appear that the minors were accorded rights against the parent after reaching their majority that could affect their rights to their damage. If their mother was unusually generous, or waived any of her rights, it was to their advantage— not their injury. The suit was for support, maintenance, and abandonment, and will be more fully treated under the exception alleging error in decreeing a lump sum judgment.

That an action for alimony is a suit in equity, and does not require the verdict of a jury, would appear to be the established law of this State. Nor was it necessary to sell the lands as in a judicial sale. Chapter 179, beginning at page 1184, Vol. 3 of the Code of 1932, § 9066 *et seq.*, relating to execution and judicial sales, has no application to a change in investment and matters of this kind which are inherent in the equitable jurisdiction of the Court.

It is true as a general principle that in a suit for alimony a lump sum judgment, or settlement in gross, is not usually decreed. This arises from the nature of such a suit, but the present case presents a suit for alimony and abandonment under most unusual circumstances, and where the fundamental law of our State forbids a divorce *a vinculo*. We have not only the abandonment of a wife and six children, but the abandonment now for practically four years by the defendant-husband of valuable property and a valuable business which requires active personal management and some one in authority to handle and protect.

Considerable confusion and conflicting opinions concerning divorce and property rights of the estranged husbands and wives arise from the fact that originally all causes of divorce were heard first in the ecclesiastical Courts, and then in Parliament, with no or scant record of either; and that statutory authority enacted by the several states varied greatly, as did their laws respecting the property rights of husband and wife.

Accordingly a resort to general and uniformly accepted principles will be helpful. It seems accepted that an action in alimony is brought in the name of the wife, but for the benefit of herself and her children, when, as here, she is awarded their custody; that the children will be specifically provided for as wards of the Court, wherever necessary, and the mother may be required to give bond thereabout; that the cause of action is considered, generally, as *in personam* requiring the husband from his investments and from his salary or net income to deal fairly with his wife and children; a lump sum judgment, or settlement in gross, as it is called, *while not favored, will be given or decreed, either in exceptional cases, or when consented to,* and the amount to be so allowed in gross is dependent upon the husband's estate and his ability to earn. Alimony, like the alimentum of the civil law, from which the word was evidently derived, originally had for its sole object the provision of food, clothing, habitation, and other necessaries for the support of the wife; but is now uniformly held to require sufficient to maintain both the wife and the children in their accustomed station of life, if the husband be able to do so. He cannot support himself in luxury and them in squalor; and the test of what is proper is both the estate and the ability to earn.

Some Courts hold that an action for alimony cannot be maintained except in connection with a suit for divorce; and that, as the cause is primarily one *in personam,* a suit for alimony can only be maintained when personal service on the other spouse is effected. The

fallacy of this argument in this State, where divorce *a vinculo* is prohibited by the Constitution and alimony decrees are at all times rendered in equity, becomes apparent, as is also shown by the facts of this case which would present a right without a remedy. Equity will always endeavor to provide a remedy where one has a right violated. The attachment acts are plainly applicable. The confusion and diversity of opinion arises from the reasons heretofore given, and because each Court in the main is of necessity driven to a construction of its own statutes, and its own power or authority, which power even, in a few cases, has been denied. But in this State there is certainly no limitation on the power of the Courts to settle and decree the rights of litigants, save as prohibited by the fundamental law. Article 5, §§ 4, 15, and Article 17, § 3, Constitution 1895.

We have here beyond question a most unusual situation. A husband deserts his wife and six children without notice, and goes away with a young woman, but after a well-considered plan whereby he disposed of considerable of his property and gradually from his business put into cash that he also carried away, of which four to five thousand dollars is accounted for by an employee. He left behind without instructions to any one a lucrative oil business and property estimated at the time conservatively as worth practically $61,000.00. Though the local paper carried notice immediately thereafter concerning his estate, and in the present suit he was served by publication, after practically four years nothing has been heard from, or of, him. The business that he left was highly competitive and of such a nature as to require personal management and attention. He left a considerable property behind, and certainly carried considerable currency with him, as herein stated before; and every circumstance logically and necessarily carries the conviction that the property he left was for the purpose for which it was used—his deserted and abandoned family. His agreement to the order could not be plainer had he formally consented—and there is accordingly

in the case both rules which make for the exception and allow a settlement in gross, or lump sum judgment. In addition, it will be noted that an action *in personam* has by his absconding been made impossible, and the Court cannot consider in fixing his responsibility his ability to earn. It is left to deal with the property he voluntarily left, and cannot for seven years be expected to operate an oil business. While he cannot be presumed dead until the end of such period, it may not be an unnatural assumption that, having been gone for four years, he will not return in the next three.

"*Ordinarily,* in the absence of express statutory authorization, a court cannot award alimony in a gross sum, owing to the fact that the right to maintenance, of which it is an equivalent, constantly accrues with the passage of time. *Of course, irrespective of statutory authority, a decree may be entered, on the consent of the parties, awarding a gross sum in lieu of a periodical allowance.* In a number of jurisdictions, however, statutes expressly provide for the allowance of alimony in a gross sum. In others although there is no express statutory sanction for an allowance in gross, the power to make such an award has frequently been implied from general statutes requiring a reasonable and just allowance to be made for the maintenance of the wife. Where a gross sum is awarded instead of a periodical allowance, it may be made payable in its entirety or in installments as the court may see fit. * * *" 1 R. C. L., p. 928, § 76. (Italics added.)

"Alimony is not an estate, nor a portion of the husband's estate to be assigned to the wife as her own; but merely an allowance out of the husband's estate for the nourishment of the wife. It is payable out of his estate, real as well as personal; but the word never covers the estate itself. Accordingly, although the decisions are not harmonious, the weight of authority is to the effect that in the absence of express statutory authorization, a court possesses no power to vest in the wife the title to a portion of the husband's

estate as an allowance of alimony. *Of course, if it is impossible to secure personal service on a defendant husband, and jurisdiction can only be acquired by subjecting his property within the boundaries of the state to the jurisdiction of the court, such property, whether realty or personalty, may be appropriated as alimony and decreed to the wife in satisfaction of the award.* \* \* \*" 1 R. C. L., p. 926, § 75. (Italics added.)

"Where it is impossible to secure personal jurisdiction of a defendant husband by service within the state, a court may acquire jurisdiction by substituted or constructive service, provided property of the husband situated within the state is seized and brought within the control of the court by attachment or receivership. \* \* \*" 1 R. C. L. p. 886, § 26.

The case of *Wesner v. O'Brien,* 56 Kan., 724, 44 P., 1090, 1091, 32 L. R. A., 289, 54 Am. St. Rep., 604, is closely in point. There O'Brien abandoned his wife, who sued him for divorce and alimony. The Court awarded her alimony in gross by decreeing her title to lands of defendant in another county—the defendant having absconded, been served by publication, and defaulted. The wife sold the lands, and thereafter O'Brien returned and brought an action for their recovery. *Inter alia* it was there said:

"In *Dillon v. Heller,* 39 Kan., 599, 18 P., 693, it is held that: 'Kansas is supreme, except so far as its powers and authority are limited by the constitution and laws of the United States. And, within the constitution and laws of the United States, the courts of Kansas may have all the jurisdiction over all persons and things within the state which the constitution and laws of Kansas may give to them, and the mode of obtaining this jurisdiction may be prescribed wholly, entirely, and exclusively by the statutes of Kansas. To obtain jurisdiction of anything within the state of Kansas the statutes of Kansas may make service by publication as good as any other kind of service.'

"The same view has been expressed by the supreme court of the United States, where it is said: 'The state, through its tribunals, may subject property situated within its limits, owned by nonresidents, to the payment of the demands of its own citizens against them, and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens, and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens.' *Pennoyer v. Neff,* 95 U. S., 714 [24 L. Ed., 565].

"In the exercise of this power, lands of nonresident owners are appropriated for the taxes assessed against them upon a publication notice only; mortgage and mechanics' liens are foreclosed against nonresident defendants where there is neither personal service nor appearance; and the property of nonresident defendants lying within the territorial jurisdiction of the court is subjected to the payment of claims and demands, in a variety of ways, without other service than by publication. *Dillon v. Heller,* 39 Kan., 599, 18 P., 693 [*supra*]. It was therefore competent for the legislature to provide for the granting of a divorce upon constructive service, and, as alimony is an incident of divorce, it may be awarded in the same proceeding, if it is within the power of the court. Did the district court of Johnson county exceed its jurisdiction in decreeing the land in question as alimony? It had jurisdiction of the plaintiff, who was a resident of Kansas and of the county in which the action was brought. The child whose custody she asked, but who died before the decree was rendered, was within the territorial jurisdiction of the court. The land sought to be appropriated as alimony was within the state and the operation of its laws, and subject to the control and disposition of its courts. The wife asked that this particular tract be subjected to the payment of her claim for support, definitely describing it in her petition, and set-

ting out facts entitling her to alimony. That such relief was demanded was expressly stated in the publication notice wherein the land was particularly described. In this way the land was brought before the court, and subjected to its control. It is true, as the authorities cited by the defendant in error show, that upon such a notice a judgment .for money, or one which could be enforced against the person of the defendant, cannot be rendered. A court has no authority to render a judgment *in personam* without obtaining jurisdiction of the person of the defendant. Here, however, the land was brought within the control of the court in what was substantially a proceeding *in rem*. The complaining wife was here. The land sought to be subjected as alimony was here. She had an inchoate interest in the land, which possessed the element of property to such a degree that she could maintain an action during the life of her husband for its protection, and for relief from fraudulent alienation by her husband. *Busenbark v. Busenbark,* 33 Kan., 572, 7 P., 245. It was necessary for the support of the wife, who was seeking a divorce, and the law provides that alimony may be awarded in such cases. The land was subject to the laws of the state, and was within the reach of the proceedings and process of its courts. In such a case we think the court has power, not only to terminate the marriage relation, but to fix the custody and control of the children of the marriage who are before the court, and to appropriate as alimony any real property of the defendant within its territorial jurisdiction. It is true that there was no formal seizure of the property, but a seizure of land in such a case is little more than a form. The essential matter is that the defendant shall have legal notice of the proposed appropriation; and this is afforded by the publication notice, which warns the defendant that one of the purposes of the proceeding is the sequestration of the land. It refers interested parties to the petition, in which the land is definitely described, and wherein it is asked that the land be set apart as alimony. A formal seizure is no more essential to the

jurisdiction of the court, in a proceeding of this kind, than in an action to quiet title to land, based alone on constructive service; and in the latter case it was held that complete jurisdiction was acquired by the court without formal seizure, and in the same manner as it was obtained in the divorce proceeding. *Dillon v. Heller,* 39 Kan., 599, 18 P., 693 [*supra*]. The theory that the limit of the power of the court in a divorce suit, where there is no personal service, is the dissolution of the marriage, does not obtain in this state. In the early case of *Lewis v. Lewis,* 15 Kan., 181, it was held that upon such service a decree barring the defendant of any interest in the plaintiff's property was valid and binding. See, also, *Chapman v. Chapman,* 48 Kan., 636, 29 P., 1071. We cannot sustain the view of the court of appeals that the jurisdiction of the court in such a proceeding does not reach lands in a county other than where the court is sitting. *Wesner v. O'Brien,* 1 Kan. App., 416, 42 P., 1098. The jurisdiction depends upon the domicile of the plaintiff, and not upon the location of the land sought to be appropriated as alimony. It must be brought in the county of which the plaintiff is a resident, and cannot be maintained unless the plaintiff has been an actual resident of the state, in good faith, for one year before the filing of the petition. Civ. Code, § 640. Alimony is an incident of the divorce proceeding, and, when the action is rightfully brought, any land within the operation of the laws of the state, and which has been brought within the control of the court, may be appropriated as alimony."

A footnote to this case states that: "Land was set out as alimony in the cases of *Wiggin v. Smith,* 54 N. H., 213, and *Burrows v. Purple,* 107 Mass., 428."

A case somewhat in point is *Greenland v. Brown,* 1 Desaus., 196.

However, the objection to the jurisdiction of the Court because of the failure to so serve as to bring the defendant before the Court is fatal to the rights of the parties who claim title thereunder.

Section 434, Vol. 1, Code of Civil Procedure 1932, provides the method of service of summons as follows: Paragraph 1 provides the method of service upon corporations; Paragraph 2 of service upon minors; Paragraph 3 upon persons judicially declared to be of unsound mind; Paragraph 4 is as follows: "In all other cases to the defendant personally, or to any person of discretion residing at the residence or employed at the place of business of said defendant."

Section 436 provides the method of service by publica-·tion of ·summons "Where the person on whom the service of the summons is to be made cannot, after due diligence, be found within the State, and that fact appears by affidavit to the satisfaction of the Court, or a Judge thereof," then certain named officers may grant an order for the publication of the summons: "The order shall direct the publication to be made in one newspaper, to be designated by the officer before whom the application is made, as most likely to give notice to the person to be served, and for such length of time as may be deemed reasonable, not less than once a week for three weeks. In case of publication, the court, judge, clerk  *  *  *  shall also direct a copy of the summons to be forthwith deposited in the post-office, directed to the person to be served at his place of residence, unless it appears that such residence is neither known to the party making the application, nor can, with reasonable diligence, be ascertained by him."

The plaintiff undertook to make service of the summons of the original complaint, as well as that of the amended complaint, on the defendant, Alexander J. Matheson, by leaving it with a person employed at the place of business which the said defendant conducted at Bennettsville before his disappearance. If it were established that he was still conducting that place of business, and the service was properly and legally made, it would be sufficient. Evidently in making the service in this manner, the plaintiffs assumed that the said defendant was a resident of the State, and

yet the complaint, by its allegations, disproves the assumption. It alleges that the defendant, without any notice to his wife, or any one else, suddenly departed for parts unknown, and since that time his wife, her acquaintances, his mother, are without word from him and are in ignorance of his whereabouts; that efforts to find him are unavailing; that at the same time of his disappearance a young woman of the same place disappeared; and the wife alleges on information and belief that her husband has abandoned her and his children, and that his intention is to secure a divorce in some other state or foreign country; that the plaintiff had no notice that her husband intended to leave her, but in looking back she is now convinced that his leaving was the result of a considered plan, as is shown by numerous details and incidents which come back to her with significance which she did not attach to them before; that he recently sold a farm and wholesale grocery business to which he gave a great deal of time, and which was a successful business from which he derived a considerable income. The whole purpose of the action is to have alimony allotted to her because of her husband's abandonment; and to have a Receiver of his business appointed.

There can be no doubt that the plaintiff and her attorneys were of the opinion, and were justified therein, that Alexander J. Matheson had permanently left the State; was no longer a resident thereof. They were bound to know that the service of the summons on the original and that on the amended, complaint, by leaving them with L. E. Hassinger at the place of business conducted by said defendant when he disappeared, would not give him notice of the impending action.

If it were conceded that Matheson was a resident of the State at the time of the attempted service on Hassinger, it remains that the proof of service is ineffectual to give the Court jurisdiction of him and his property. The case in this respect is ruled by the case of *Cannon v. Haverty Furniture Co.,* 179 S. C., 1, 183 S. E.,

469, 473. In that case 'an action had been brought by Haverty Furniture Company against Cannon. The proof of service of the process was in these words: "H. E. Watts, being duly sworn, says that he served the summons and complaint in this action on the defendant by delivering to Mrs. P. W. Fallow, corner of Bull and Taylor Sts. and by leaving with her a copy of the same at Columbia, S. C., county on the 21 day of October A. D., 1933, and that deponent is not a party to this action."

Cannon had resided at Mrs. Fallow's. In connection with the case, Cannon was arrested, and brought action against Haverty Furniture Company for false imprisonment. The cardinal issue in the case was whether Cannon had been served with the summons and complaint, or more accurately speaking, did the record show such service. We have shown above the language of the affidavit of service.

This Court said:

"Was Cannon properly served with the summons and complaint in the suit of *Haverty Furniture Company v. Cannon?*

"Under the law of this state (see section 434, subd. 4, Vol. 1, Code of 1932), in order to give the county court of Richland County jurisdiction of the defendant, * * * it was necessary for Cannon to be served personally with the summons and complaint or that the same should have been given to some person 'of discretion residing at the residence or employed at the place of business of said defendant'."

There follows the affidavit of service which we have set out above. The Court said thereabout: "There is nothing in the affidavit to the effect that Mrs. Fallow is or was a person of discretion, and nothing to the effect that she resided at the residence of the defendant, or was employed at the place of business of the defendant. Further, the affidavit does not show that Mrs. Fallow was at the residence or place of business of the defendant when the said copy of the summons and complaint was given her. *The proof of*

service, in our opinion, is not only defective, but void on its face, and the attempted service on the defendant did not give the court jurisdiction of the defendant." (Italics added.)

Cannon was arrested on an order of the Court based on this alleged service of the process. He recovered judgment in his action for false imprisonment. The defendant appealed. This Court said further in the opinion we are reviewing: "The certificate of service, that is, the certificate purporting to show service, cannot be supplemented for this purpose. Further, *the certificate of service should have been complete within itself in order to give authority for the said order of arrest and subsequent imprisonment thereunder.* * * * It is not sufficient that the purported proof of service does not show on its face that the service was in an improper way, *but the proof of service should show affirmatively that the requirements of the law in making the service were complied with.*"

The affidavit of service in our case is equally defective. It does not show that L. E. Hassinger, to whom it is stated by the affiant he gave the summons and complaint, was employed at defendant's place of business; so far as is declared by the affidavit, he might have been incidentally at the place of business or a visitor, or loiterer. Nor does it show that he is a person of discretion. He might have been an irresponsible boy. It is idle to say that proof *aliunde* the affidavit of service shows that he was employed at defendant's place of business, if it be conceded that it was still defendant's place of business, and that L. E. Hassinger was still employed by this defendant.

The proof of service must show affirmatively that the service of the process was correctly made. This is imperatively necessary to give the Court jurisdiction of the person thus sought to be brought into Court. It is not contended that in this original action, under which plaintiffs claim title to the property which they have contracted to sell to C. L. McCormac and L. E. Hassinger, that

Alexander J. Matheson was served as a nonresident by publication of the summons. No order of publication was taken; no publication of the summons was made, nor was a copy of the summons and complaint deposited in the post office addressed to said defendant at his last known place of residence, nor is there any showing that his place of residence was unknown to the applicant for the order of publication, nor could with reasonable diligence be ascertained.

Nor was any attempt made to obtain jurisdiction of the *rem* by attachment.

The conclusion is inevitable that the Court did not obtain jurisdiction of the defendant, Alexander J. Matheson in the action through which the plaintiffs. therein obtained title to the property they propose to convey to C. L. McCormac and L. E. Hassinger.

It follows that they cannot give to the said C. L. McCormac and L. E. Hassinger good, marketable title in fee simple thereto. And, likewise, it necessarily follows, since there was no jurisdiction to so order, that no funds belonging to the minors were invested in the corporation attempted to be formed.

The appeal before us is from the order of the Circuit Judge holding otherwise. There is no appeal from the decree which purports to vest title to this property in the plaintiffs. It is true that counsel in this present case agreed that counsel for appellant might, as far as is necessary to determine whether plaintiffs can give appellants, by their conveyance of the property, good, marketable deeds, criticize the decree in the original case. We have determined that for failure in the inception of that case, in the service of the summons and complaint, to obtain jurisdiction of the person or property of Alexander J. Matheson, plaintiffs could not convey good and marketable title to the property.

The order appealed from is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

Mr. Justice Carter did not participate on account of illness.