## No. 12,943.

### C. L. Shepard vs. City of New Orleans and Mrs. F. Ault.

#### Syllabus.

The provision of the city charter that the council shall not grant any privilege for the opening of a barroom except upon the written consent of a majority of the *bona fide* house holders, or property holders, within three hundred feet of the place proposed for its establishment, means either one or the other, indifferently, and without distinction.

A house holder is a person who occupies a house as a place of residence or business, without any relation to the character of the title by which the property is held.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Parkerson & Tobin* for Plaintiff, Appellee.

*C. H. LaVillebeuvre,* Assistant City Attorney, for City of New Orleans, Defendant, Appellant.

*Buck, Walshe & Buck* for Mrs. F. Ault, Defendant, Appellee.

Argued and submitted March 23, 1899.
Opinion handed down April 3, 1899.

The opinion of the court was delivered by
Watkins, J.  Alleging himself to be a citizen and tax-payer, resid-

ing at the corner of Toledano and Carondelet streets, in the city of New Orleans, the plaintiff avers that the defendant, Widow Ault, applied to the city council for permission to operate a barroom at the corner of the two aforesaid streets, and that said permission was granted her by the said council, by an ordinance which was passed over the *veto* of the mayor.

That said permission to operate said barroom "is contrary to law, in utter disregard of the rights of petitioner and the other residents of that neighborhood; and is a gross usurpation of authority on the part of the city council."

He represents, that a majority of those entitled to vote upon the question are opposed to the granting of said permit; and that the city council is without authority to grant it otherwise.

That a barroom at said corner is detrimental to the welfare of the neighborhood, and will work irreparable injury to him, as it will be a loafing-place for disorderly persons, who, becoming intoxicated upon liquors sold on the premises, will disturb the peace and quiet of the residents, and render it unsafe, and even dangerous for the women and children.

That said locality is in the centre of the residential portion of the city, and the location of a barroom there is an outrage upon decency, and a wanton disregard of the rights of the reputable people who live there.

Alleging prospective damages at $2500.00 in the depreciation in the value of his property, as in the nature of an injury which is perpetual, petitioner prays that an injunction issue against the city of New Orleans, prohibiting it from promulgating said ordinance, and from issuing to the defendant, Mrs. Ault, the proposed permit; and enjoining and restraining Mrs. Ault from opening or operating a barroom at said locality.

His prayer is for the maintenance and perpetuation of his injunction, and a decree pronouncing said ordinance illegal, null and void.

After pleading an exception of no cause of action, the defendant, Mrs. Ault, filed an answer, pleading the general issue, and prayed for the dissolution of the plaintiff's injunction.

The city urged a like exception, and made a similar answer.

On the trial, there was judgment in favor of the *plaintiff*, maintaining and perpetuating his injunction, as to both of the defendants; and from that judgment the city of New Orleans has alone appealed.

The following is, substantially, the statement of facts upon which. the suit was tried, viz.:

That Mrs. Ault petitioned the city council for a permit to open a. barroom at the locality specified, on the 17th of July, 1897; and that nineteen *property owners* signed her petition.

Subsequently, five of the signers withdrew their signatures, and. signed a protest against the allowance of the permit—thus reducing. the number of signers to fourteen.

On the protest opposing the permit, were twelve *property owners,* and *five tenants,* making a total of seventeen.

The protestants have three hundred (300) feet more frontage than is prescribed by city ordinance regulating the matter.

An ordinance granting the permit was passed over the mayor's *veto,* and contrary to the advice of the city attorney.

The mayor's *veto* contains the statement, viz.:

"I do so on the opinion of the city attorney, that the prerequisites " to granting this privilege, have not been complied with; and, as the. " law is clearly set forth in the accompanying documents."

The city attorney's statement is, that Mrs. Ault signed her own peti- tion, and her signature was counted; and that Mr. Frank signed her petition as the owner of a piece of property which was occupied by Mr. Graham as tenant, whereas, Mr. Graham signed the protest against it.

That Mr. Henry, who lives in Covington, and owns two houses in the neighborhood, signed the petition for the permit, whereas his two · tenants occupying the houses, signed the protest.

That the names of the two property owners were counted, whereas · the signatures of the other tenants were disregarded.

The opinion of the city attorney on this question, is as follows, viz.:

"My opinion is, that the votes of Mr. Graham and Mr. Henry's ten- · ants should have been counted, and the votes of Mr. Frank and Mr. Henry rejected."

Section 21 of the city charter provides:

"That the council shall not grant any privileges for the opening of' any barroom, saloon, concert-saloon, or dance-hall, except upon the · written consent of a majority of the *bona fide* house-holders, or,. property-holders within three hundred (300) feet, measured along the street fronts, etc."

In his opinion, which was introduced in evidence, (as well as the foregoing section of the charter), he says:

54

"House-holders"—within the contemplation of that section—"are any persons who occupy houses for the purposes of residence or business, and have control of the inmates thereof.

"The nature of the title under which the occupant holds possession of the house is immaterial."

Referring to the phrase of the charter, "*bona fide* house-holders *or* property-holders," he says:

"As it was clearly the intention of the legislature to give to a majority of the persons residing in said neighborhood, the right to prevent or permit the establishment of a barroom, they being the persons directly affected by such an establishment, the only reasonable construction to be put upon (that) section of the charter is, that the privileges for the opening of bar-rooms shall be preceded by a petition signed by a majority of the house-holders, and when there is vacant property, (then) by the owners of such vacant property.

"It was certainly never contemplated that a non-resident property-holder owning all, or a greater part of the property in a neighborhood where it is proposed to locate a barroom, should have the right to allow the location of a barroom, even if its establishment was opposed by *all* of the house-holders, who, alone, would be subject to the annoyance and damage the barroom might cause."

In his letter to the city engineer requesting an interpretation of the word "house-holder," the city attorney said:

"I beg leave to say, that in my opinion, a house-holder is any person "who occupies a house for the purpose of residence, or business, and "has control of the inmates thereof. The nature of the title under "which he holds possession of the house is immaterial."

It is admitted, *per contra,* that the city council by Ordinance No. 12,636, C. S., put a different construction upon that section (21) of the charter.

The provision of that ordinance is as follows, viz.:

"That, hereafter, it shall not be lawful for any one to set up or "establish a barroom, saloon, concert-saloon, dance-hall, beer-house, "or place where liquors are sold * * * without permission of the "council previously applied for in writing, which shall be accompan- "pied by a written consent of a majority of the *bona fide property-* "*holders* along the street fronts, etc."

That ordinance bears date of passage, September 3rd, 1896, subsequent to the enactment of the city charter; and the conspicuous feat-

ure of its phraseology is, that the word *house-holder* is completely eliminated therefrom, *ex industria.*

The only legitimate inference to be drawn therefrom is, that, in the opinion of the council, *house-holder* and *property-holder* possessed the same identical meaning, or signification; but that interpretation can not be correct, because the owner of property unimproved could not, in any sense, be termed a house-holder.

Counsel for Mrs. Ault does not agree with either the city attorney or the city council with regard to the interpretation to be placed upon the aforesaid phrase of the city charter.   He says in his brief, viz.:

"And when we consider that after all, this statute is a 'regulation;' " that the right to carry on a barroom or similar business in the ab- " sence of restrictive legislation, is as absolute as the right to do any " other business, this interpretation becomes reasonable, because the " lawmaker may have it in mind to ask only a certain moral condition " that would justify the council in granting the privilege, and it may " well have considered that such privilege to do what otherwise a man " might naturally do, might well be primarily accorded when a ma- " jority in number of *either* householders *or* owners of property within · " a certain limit recommend the person as a fit one to be permitted to " carry on such business and consent to the establishment of the bus- " iness itself."

It is, in our opinion, quite a conspicuous fact that the term *"own- er"* was omitted from the statute, and in its stead the terms *"house- holder,"* and *"property-holder"* were employed.

The owner of unimproved real property is, in a certain sense, a prop- erty-holder; and a tenant by the month or year is a house-holder.

Webster speaks of the word "or" as indicating an "alternative gen- " erally corresponding to either, as 'either this or that;' that is to say, " *either* one thing *or* another thing."

Applying this rule to the phrase in question, we will have it read thus, viz.:

*"Either* house-holder, *or* property-holder."

That is to say, *either one or the other,* indifferently.

On this hypothesis, either one could sign the petition or protest, without distinction, and the name of either must be accepted and con- sidered as equally efficacious.

But, it does not possess the significance of allowing both to sign, either petition or protest; either one or both.   Everything else being

equal, the preference of right should be given to the house-holder, as being the party most interested; and particularly when the property-holder is an absentee. And indeed some significance should be attributed to the fact that the word *house-holder* is the first one mentioned in the statute. On this interpretation of the city charter, protestants were in the majority, and the petition of Mrs. Ault was defeated.

Judgment affirmed.

Mr. JUSTICE MONROE having decided this case in the lower court, takes no part on the trial of the case on appeal.