## 9694

### IN RE COW CASTLE DRAINAGE DIST. BERRY ET AL. v. AMMONS ET AL.

#### (92 S. E. 1036.)

1. DRAINS — ESTABLISHMENT OF DISTRICT — PETITION—"AND"—"OR."— Drainage act (27 Stat. at Large, p. 92) provides for the establishment of a drainage district wherever a petition signed by a majority of the resident landowners in a proposed drainage district or by the owners of more than one-half the land in acreage contemplates the establishment of a district, either on a petition signed by a majority of the landowners or upon a petition by the owners of more than one-half of the land in acreage, and it is not necessary that both elements be present, it not being necessary to construe the word "or" as meaning "and," the intent of the statute being clear.

2. DRAINS—ESTABLISHMENT OF DISTRICT—PRELIMINARY PROOF.—In a proceeding to establish a drainage district, the clerk may order such district to be established and a board of viewers to be appointed without having taken proof in the first instance that the signers of the petition owned the majority of the land or that the land was subject to overflow and too wet for cultivation.

3. DRAINS—ESTABLISHMENT OF DISTRICT—PRELIMINARY PROOF—OBJECTIONS.—In a proceeding to establish a drainage district, protesting owners cannot complain that the clerk failed to require proof that the land was wet, where by taking an appeal they prevented the taking of such proof.

4. DRAINS—ESTABLISHMENT OF DISTRICT—STATUTES.—Civ. Code 1912, sec. 2201, providing that lands that will not be affected by the proposed drainage shall be excluded, does not contemplate the exclusion of lands not benefited approximately to the extent of the assessment.

5. DRAINS—ESTABLISHMENT OF DISTRICT—BOARD OF VIEWERS.—Drainage act, providing for the appointment of a board of viewers consisting of an engineer and two freeholders, does not require the freeholders to be disinterested.

Before SEASE, J., Orangeburg, January, 1917.   Affirmed.

Proceeding by Daniel D. Berry and others against Gena Ammons and others to set aside an order of the Circuit Court establishing a drainage district. From an order of the Circuit Court affirming that of the clerk, complainants appeal.

The following exceptions were taken in the case:

1. Because the Circuit Judge erred in sustaining the finding of the clerk of Court that he had jurisdiction to proceed with the formation of Cow Castle drainage district before he had required proof that the petitions therefor were signed by a majority of the landowners, and that the land proposed to be included in the said district was subject to overflow and too wet for cultivation.

2. Because the Circuit Judge erred in sustaining the clerk of Court in finding that the petition for the proposed Cow Castle drainage district was signed by a majority of the landowners therein.

3. Because the Circuit Judge erred in ruling that a number of original petitioners should not be allowed to withdraw their names from the petition for the drainage, and join the nonpetitioners, or those opposed to the drainage, because they had signed the petition for the drainage under a misapprehension through mistake, and because of misrepresentations.

4. Because the Circuit Judge erred in sustaining the clerk of Court in construing that the word "or" did not mean "and" where it occurs in the following quotation from the drainage act: "Wherever a petition signed by a majority of the resident landowners in a proposed drainage district or by the owners of more than half the land in acreage."

5. Because the clerk of Court erred in holding that. even if the persons who desired to withdraw from the petition were allowed to do so, it would not affect the result, for the reason that the petitioners would still have left on the petition a majority of the landowners in the district in favor of the drainage.

6. Because the Circuit Judge erred in sustaining the clerk of Court in establishing the proposed Cow Castle drainage district, when there was no proof in the record to show that the land embraced therein was subject to overflow and too

wet for cultivation, and when the clerk himself made no affirmative finding that the land was of that character, and the record discloses that the land is, in fact, not of that character.

7. Because the Circuit Judge erred in sustaining the clerk in including in the drainage district the land of the nonpetitioners, merely upon the ground that the said land would receive some benefit; the error being that no land should be included in a drainage district unless the said land will receive a reasonable benefit, that is to say, a benefit approximating the amount of assessment which the land will have to bear to pay for the drainage.

8. Because the Circuit Judge erred in sustaining the ruling of the clerk that the board of viewers were disinterested; the error being that the freeholder members of the board of viewers were both petitioners for the drainage, and one of them, J. D. Shuler, is the indorser of a note for $1,500 for the preliminary expenses incurred in the formation of the said district, which he will have to pay if the drainage is not established, and which he will not have to pay if the drainage district is established.

*Messrs. Brantley & Zeigler*, for appellants, cite: *As to jurisdiction of clerk:* 70 S. C. 397. *Interpretation of "or" in Civil Code, sec. 2197;* 36 Cyc. 1123; 6 Words & Phrases 5004; 3 Wall. 445; 25 S. C. 453, 455; 7 Rich. Eq. 422, 424; 1 Brev. 319; 5 Rich. Eq. 426, 433; 3 Rich. L. 289, 200; 2 Speer 786, 794; 81 S. C. 14. *Evidence as to benefit:* 221 U. S. 1.

*Messrs. Wolfe & Berry*, for respondents, cite: *As to constitutionality of act:* 103 S. C. 184. *Construction of act as to procedure:* Civil Code, secs. 2232, 2236, 2197. *Findings of fact based on statements of counsel:* 65 S. C. 496. *Assessments in accord with benefits:* Civil Code, secs. 2207, 2212. *Irregularities in procedure:* Civil Code, sec. 2232. *Appeal:* Civil Code, secs. 2203, 2212.

*Messrs. Raysor & Summers,* also for respondents.

June 26, 1917.

The opinion of the Court was delivered by Mr. Justice Gage.

Public interests suggest a speedy decision of this controversy. We shall for that reason forego a very full discussion of the questions made by the appellants' elaborate argument.

The counsel for respondents opened his argument with the interesting historical statement that this cause is but "the lengthened shadow of the late Dr. Samuel Dibble." The locus of the controversy lies around Bowman, in Orangeburg county, which respondents' counsel referred to as the last scene of the public activities of Dr. Dibble in the development of the State's agricultural low lands.

The case arises out of the application of the act of 1911 (27 Stats. 92) and its amendments. Any novel and radical experiment in public administration provokes controversy. We have before this considered if these drainage laws were within the limits of the Constitution. *Jackson* v. *Breeland,* 103 S. C. 184, 88 S. E. 128.

The region now involved lies southeast of the city of Orangeburg, stretching towards Dorchester, and is designated "Cow Castle drainage district." It embraces a total area of 42,353 square acres, and occupied by some 525 landowners; and the contemplated bond issue to effect the enterprise is $200,000.

Citizens of the territory in question filed a petition with the clerk of the Circuit Court wherein it was alleged that they constituted a majority of the resident landowners therein, and that they were owners of more than half of the land therein, that the following (stating it) was a description of the area which they proposed to erect into a drainage district, and that the landed area was subject to overflow

and too wet for cultivation, and the public health and welfare would be promoted by drainage and ditching the same.

The prayer was for the issuance of a summons to those landowners in the proposed district who had not joined in the petition and for the appointment of a board of viewers to examine the lands and make a preliminary report upon the allegations of the petition. .

The summons suggested by the statute was issued. Thereafter some 75 citizens who had aforetime signed the petition for the district appeared before the clerk and demanded that their names should be stricken off the petition.   The demand was heeded, the allowance of which is not an issue, in view of the disposition of the fourth request. The clerk then named as a board of viewers "a disinterested and competent engineer and two resident freeholders of the county."   The board made a preliminary report, and stated that, "after carefully considering the location of the lands, * * * it was of the opinion * * * that all of the lands * * * would receive some benefit, while by far the majority would receive a very material benefit," and a map was filed along with the report which indicated the proposed ditches.

Those opposed to the drainage scheme made objection before the clerk to any further procedure.   They charged that many names on the petition for drainage had been secured by fraud; they charged that the lands proposed to be drained were not wet and subject to overflow; they challenged the jurisdiction of the clerk on the same grounds made in this Court.   At several sittings the clerk took much testimony on the issues thus raised, and he heard argument of counsel pro and con.   At length the clerk made an order establishing the district and approving the preliminary report of the board of viewers.   The Circuit Court affirmed the order of the clerk, and this appeal is from that order of the Circuit Court.

We pass by the suggestion of the respondents that no appeal lies from the Circuit Court to this Court. The question was not pressed, and we take no heed of it.

There are eight exceptions. The reporter will set them out.

If the fourth exception be unsound, and we conclude it to be so, then the second, third and fifth exceptions are not relevant; for the appellants concede that the movants for a drainage district are owners of more than half the land in the proposed district.

Turning, then, to the fourth exception, it is true that the word "or" is sometimes construed by the Courts to mean "and," and the reverse of that. That construction has oftenest been made in the consideration of wills and written contracts, but well-nigh always in instances where the instrument construed was of doubtful meaning on the face of it, and generally to get at the intent of the maker of the instrument evidenced from all of the parts of it. The rule of construction in such instances is well stated by Johnston, Ch., in *Shands* v. *Rogers,* 28 S. C. Eq. (7 Rich. Eq.) 425. Statutes, too, are sometimes so construed, but not where the language of them is plain.

"It is not permitted to interpret what has no need of interpretation. When an act is expressed in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason not to adopt the sense which it naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it is to elude it." Potters-Dwarris, p. 143.

In the instant case it is manifest from the whole statute that the legislature had in mind two conditions, and intended to provide for them. Had these 42,000 acres been owned by 500 persons in differing shares, then a majority of the owners might move for a drainage district. Had they been owned 30,000 by one person and 12,000 by 5 other persons,

then that person who held the 30,000 acres might move for a drainage district. The meaning is manifest.

The appellants next challenged the jurisdiction of the clerk to make the order he did make. They put it upon the ground: (1) That the clerk in the first instance did not exact, but ought to have exacted, proof that the signers of the petition for a drainage district owned a majority of the land situated in the proposed district; and (2) that the clerk did not exact, but ought to have exacted, proof that the land situated in the proposed district was subject to overflow and too wet for cultivation.

The respondents in the procedure had simply followed the words in the statute; that instrument did not even require the petition to be verified, much less did it require the petitioners to make proof in advance of the allegations of the petition.

The petition, like a complaint, states the case only. Upon its filing the clerk is directed by the statute to issue a summons to all the parties in interest. That process brings the parties into the Court. Thereupon the clerk is directed to appoint a board of viewers; and that body is required to examine the land, and to make a written preliminary report to the clerk, setting forth four conclusions of fact, together with a map of the district. Section 2198, Civ. Code.

It is not needful to further follow the provisions of the statute; it is sufficient to say the entire instrument negatives the appellants' contention that the clerk ought in the inception to have taken proof upon the two suggested subjects.

The sixth exception is somewhat akin to the first; and the first has just been considered. The gist of the sixth exception is that there was no proof that the land in the proposed district is wet; that the clerk did not specifically find on that fact in his order; that the record testimony shows the land is not wet. The case discloses that the two hearings before the clerk were chiefly devoted to the trial of the issue raised by the dissenting landowners, to wit, that they had

signed the petition under circumstances which amounted to a fraud upon them. At those hearings there was testimony by many of the dissenters that their lands would be benefited somewhat by drainage; and there was testimony to the same effect by the engineer, Johnson. Mr. Johnson testified that the lands of the district suffered from a collection of surface water, for the removal of which there was not at present sufficient drainage. He testified he could not say how much of the land of the district was subject to such overflow until the final survey was made.

The order of the clerk established the district, dismissed the claim of fraud, and referred it to the board of viewers for further consideration to determine if any of the dissenting members should for any reason be excluded from the district, and to take such other action as is required by law, and to report their conclusions at a third meeting to be held on another day. At this point the appellants halted any further steps by this appeal; so that in the very nature of the case the appellants prevented the ascertainment of the facts about the nonproof of which they complain.

Section 2204 of the statute provides that the board of viewers, after the preliminary survey and report has been made, shall proceed to make a complete survey and a final report.

The sixth exception is, therefore, without merit.

The seventh exception, like more than one of the others, seeks to inject into the statute provisions which are not there. The statute does not declare that a landowner shall not be included in the district unless the benefit to him from the drainage shall "approximate the assessment which shall be levied upon him." The words of the statute are:

"If it appear (in the prelimary report of the board of viewers) that there is any land within the proposed levee or drainage district that *will not be affected* by the leveeing or drainage thereof, such lands shall be excluded and the names

of the owners withdrawn from such proceedings." Section 2201. (The italics are supplied.)

Most of the dissenting landowners testified that drainage would afford them some benefit; and the exception impliedly . admits there was some benefit.

When the board of viewers shall have made the final report (section 2210), and it shall come up for consideration of the clerk (section 2211)—"any landowner may appear * * * and file his objection * * * to the report * * * and it shall be the duty of the clerk * * * to carefully review the report of the viewers and the objections filed thereto, and make such changes as are necessary to render substantial and equal justice to all the landowners in the district."

The entire statute fully guards the rights of every landowner in the district. Section 2207 provides with distinct and painstaking care for the classification and gradation of benefits.

Finally, the eighth exception has the same infirmity as the seventh; it reads into the statute words the legislators did not employ. The act declares that the engineer shall be disinterested; and there is no suggestion he is otherwise. The two resident freeholders are not required to be disinterested. It is possible the legislators assumed that every landholder in the county would be interested in a public work of such grave import.

Our judgment is the order of the Circuit Court was right, and it is affirmed.