17810

HUCKABEE TRANSPORT CORPORATION, Respondent, v.
WESTERN ASSURANCE COMPANY OF TORONTO,
CANADA, Appellant
(121 S. E. (2d) 105)

*Joseph L. Nettles, Esq.,* of Columbia, *for Appellant,*

*Dalton R. Stokes, Esq.,* of Columbia, *for Respondent,*

July 26, 1961.

Moss, Justice.

Huckabee Transport Corporation, the respondent herein, instituted this action against Western Assurance Company of Toronto, Canada, the appellant herein, alleging that it breached its contract of insurance by failing to pay to the respondent the amount of a judgment recovered against it by Hoover Motor Express, Inc., on account of damages done to a certain air conditioning unit, together with costs and counsel fees. The respondent asserted in the complaint that it was entitled to recover the amount of such judgment, costs and counsel fees under the terms and provisions of a Motor Truck Cargo Liability policy issued by the appellant to the respondent. The appellant denied liability for the loss under the terms of the policy which it admittedly issued to the respondent.

This case came on for trial before Honorable Legare Bates, presiding Judge of the Richland County Court, and a jury, at the 1959 December term of said court. At the conclusion of the testimony, the respondent and appellant each moved for a direction of a verdict in its behalf. The trial Judge ruled that the evidence adduced at the trial presented no issues of fact for determination by the jury and that the only question to be determined was whether or not the loss sustained by the respondent was covered by the terms of the

aforesaid policy. The case was withdrawn from the consideration of the jury and the legal question was taken under advisement by the trial Judge. Thereafter, on February 8, 1960, he handed down his order granting judgment in favor of the respondent against the appellant in the amount of $3,650.53. Within due time the appellant gave notice of intention to appeal to this Court. The exceptions of the appellant raise the question of whether the loss of the respondent was within the coverage afforded by the aforementioned policy of cargo insurance.

It appears from the record that Hoover Motor Express Co. Inc., a common carrier, received at Collins Air Force Base, Mississippi, certain freight for delivery to Shaw Air Force Base near Sumter, South Carolina. This freight was to be carried by Hoover from the point of origin to Atlanta, Georgia, and it was there delivered to Huckabee, as connecting carrier, for transportation from Atlanta to Shaw Air Force Base. The trailer load of freight was under Hoover's seal No. 8026 and Huckabee issued a bill of lading purporting to cover the entire shipment.

In the nose of the trailer delivered by Hoover to Huckabee was a thirty ton air conditioning unit which was supposed to have been delivered by Hoover to a consignee in Atlanta, Georgia, but was left upon the trailer delivered to Huckabee, through some error of Hoover, and without knowledge of Huckabee, until after the accident in which the air conditioning unit was damaged.

The record shows that a portion of the load of freight extended higher than and protruded above the top of the trailer. It further appears that on May 23, 1956, while in transit, the tractor-trailer was driven under an overhead bridge in Columbia, South Carolina, and the load collided with the under side of such overhead bridge, damaging the air conditioning unit and other freight being hauled in said trailer.

The record reveals that Huckabee promptly notified the appellant of the damage to the air conditioning unit and the

other freight being hauled on the tractor-trailer. The appellant promptly paid the damage to that portion of the freight which was being transported by Huckabee under a bill of lading, but refused to pay for the damage to the air conditioning unit because the respondent was not a common carrier thereof within the terms of coverage afforded by the cargo policy of insurance issued by the appellant. It further appears that Hoover sued Huckabee for the damage to the air conditioning unit in the Circuit Court of Davidson County, Tennessee, and obtained a judgment therefor. This judgment, together with costs and attorneys' fees, was paid by Huckabee. The present action, as is heretofore stated, seeks reimbursement from the appellant for the amount of such judgment, together with the costs of defending the Tennessee action. It should here be stated that the appellant refused to defend the action brought in Tennessee.

The policy sued upon, in consideration of the stipulations and conditions contained therein and the premium paid, insured the respondent as follows:

"1. To an amount not exceeding Ten Thousand and No/100 Dollars in any one casualty, and not exceeding the amount of insurance specified below with respect to goods and merchandise on any one truck or trailer, against the Assured's liability to others as a private or common carrier, or under bills of lading or shipping receipts, for loss of or damage to lawful goods and merchandise consisting of General Merchandise caused directly by any of the perils enumerated below for which loss or damage the Assured may be held legally liable.

"2. This insurance shall attach and cover only with respect to such loss or damage occurring within the Continental United States and Canada, and, except as hereinafter provided, only while the said goods are in the custody of the Assured and in due course of transit. * * *"

The policy in question insures

"4. The liability of the Assured for loss or damage caused by * * *

"(d) Accidental collision of any above described truck or trailer with any other vehicle or object. * * *"

Under section 4(d) of the policy of insurance in question, the liability of the assured for loss or damage was limited to the accidental collision of the truck or trailer with any other vehicle or object. However, by proper endorsement to said policy, it was provided that "this policy is extended to insure the legal liability of the Assured for direct loss or damage caused by collision of the load with any object." The record is conclusive of the fact that the "load" was in collision with the under side of an overhead bridge. The amount of the loss in this case is not questioned by the appellant.

Frequently, motor cargo carriers, either for their own protection or because required to do so by statutory regulations, procure insurance on the property of others transported by them. 36 A. L. R. (2d) 506. In determining whether particular property shipped is covered, the courts have exhibited a tendency toward construing motor cargo carrier policies broadly. Motor carrier cargo policies usually enumerate the particular perils insured against and the conditions upon which liability arises.

The quoted portions of the policy issued by the appellant to the respondent show that it covers the assured's liability to others for loss of or damage to goods while being carried by the respondent as private *or* common carrier *or* under bills of lading *or* shipping receipts. It is readily seen that the word "or" is used throughout the basic insuring agreement. The word "or" as it is used in the insuring agreement, is a co-ordinating conjunction introducing an alternative, *Bordelon v. National Life & Accident Ins. Co.,* La. App., 187 So. 112; *Erie R. Co. v. American Auto. Ins. Co.,* 36 N. J. Super. 159, 114 A. (2d) 873. In *Houge v. Ford,* 44 Cal. (2d) 706, 285 P. (2d) 257, it was held that the function of the word "or" in a contract is to mark an alternative such as "either this or that." Applying

this rule to the provision of the insurance policy above referred to, it is clear that there was no requirement that the goods be transported by the insured as a private or common carrier and under a bill of lading or shipping receipt. The policy provides coverage in the event that the assured is transporting the goods either as a private or common carrier. There is no requirement that such carriage be under a bill of lading or a shipping receipt because this is the alternative of the insuring agreement. Certainly the respondent received the air conditioning unit as a carrier. It is not necessary to a decision of this case for us to determine whether it was received by the respondent as a private or common carrier since the result would be the same, because the respondent was insured as a private or common carrier. However, attention is directed to the fact that the policy contains an endorsement in conformity with section 58-1481 of the 1952 Code of Laws of South Carolina, which requires a motor carrier to file with the Public Service Commission a liability and property damage insurance policy in order to qualify as a common carrier.

A "carrier", according to the legal usage of the term, is one who undertakes to transport persons or property from place to place. *Windham v. Pace et al.*, 192 S. C. 271, 6 S. E. (2d) 270. A "common carrier" is one who undertakes for hire to transport from place to place the property of others who may choose to employ him, offering such services to the public generally, and neither the maintenance of a station nor the issuance of a bill of lading is required. *United States v. Smith*, 6 Cir., 215 F. (2d) 217. A "private carrier" is one undertaking to deliver goods in a particular case for hire or reward without being engaged in business of carrying as public employment. *McIntyre v. Harrison*, 172 Ga. 65, 157 S. E. 499. It has been held that a "common carrier" may become a "private carrier" when he undertakes to carry something which it is not his business to carry. *Mengel Co. v. Inland Waterways Corporation*, D. C., 34 F. Supp. 685.

It is the position of the appellant that the coverage of the policy here in question only applied, with respect to loss or damage, "while the said goods are in the custody of the assured and in due course of transit." There can be no question but that the air conditioning unit here involved was in the custody, control and possession of the respondent at the time it was damaged. Was it in due course of transit?

The undisputed evidence shows that the respondent received a full trailer of freight, under seal, including the air conditioning unit, in the ordinary course of its business as a carrier. The respondent did not know that the air conditioning unit was erroneously left upon the trailer by Hoover, the originating carrier. It was testified in behalf of the respondent, with reference to what a trailer under seal is, as follows:

"Well, a trailer under seal would be a trailer a carrier receives either from a shipper or another carrier which had a seal in the back of the door which, of course, has a number on it, and by affixing that seal the carrier receiving the load does not actually count or see the merchandise that's on that trailer but accepts it as described on the freight bill under the seal indicating that no actual check of the freight was made."

The testimony also shows that it is a common practice and customary for a connecting carrier to receive and accept fully loaded trailers and vans, under seal, without making any examination of the goods and merchandise upon such trailer or van. It was further testified that at the particular time here involved, the respondent was receiving many full loads of merchandise from Hoover in Atlanta, Georgia, moving to Shaw Field, Sumter, South Carolina. It was also testified that it was common knowledge that anyone familiar with the trucking business knows that there are transfers of fully loaded trailers, under seal, from one trucking line to another, without the receiving trucking line knowing the

contents of the shipment, other than what is revealed on the bill of lading or shipping receipt. Here, the respondent received the fully loaded trailer, under seal, from Hoover in the ordinary course of its business, and was moving same in due course of transit. When the "due course of transit" provision of the policy is read in conjunction with the provision of coverage concerning insured's liability to others as a private or common carrier, or under bills of lading, or shipping receipts, it is clear to us that the fully loaded truck, under seal, was in due course of transit. The trial Judge so held and we agree with such conclusion. The fact that there was an overcarriage of the air conditioning unit does not require a finding that the fully loaded trailer, under seal, was not in due course of transit. Under the facts of this case, we think the lower Court was correct in holding that the cargo policy of insurance issued by the appellant to the respondent covered the loss of and damage to the air conditioning unit. The appellant could have limited its liability by providing in the motor truck cargo liability policy issued by it, that merchandise lost or damaged would not be covered unless the same was being transported under a bill of lading or shipping receipt. This it did not do.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.