18029

Jean C. BREWER, Appellant, v. John M. BREWER, Respondent
(129 S. E. (2d) 736)

*Messrs. Savage, Royall & Phillips,* of Camden, and *Gray-don, Davis & Sawyer,* of Columbia, *for Appellant,*

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Respondent,*

*Messrs. Savage, Royall & Phillips,* of Camden, and *Graydon, Davis & Sawyer,* of Columbia, *for Appellant, in Reply,*

February 13, 1963.

Moss, Justice.

Jean C. Brewer, the appellant herein, and John M. Brewer, the respondent herein, are husband and wife, and were married on January 12, 1935. Two children were born of this marriage, both of whom are now *sui juris*.

This action was commenced in May, 1959, in the Juvenile, Domestic Relations and Special Court of Kershaw County, wherein the appellant asked for a separation from the respondent, a property settlement, support and maintenance, and counsel fees. The complaint, as a basis for the relief sought, alleged that the respondent had been flagrantly unfaithful to his marriage vows and had committed adultery. The respondent, by answer, denied the material allegations of the complaint and set out that the appellant had a substantial income of her own and that she left the home furnished by him without just cause or excuse. He also set forth a counterclaim in which he asked for a divorce on the ground of desertion. A reply to the counterclaim was made by the appellant wherein she denied the material allegations thereof.

This case tried before the Honorable J. Douglas Montgomery, Judge of the Juvenile, Domestic Relations and Special Court of Kershaw County. He took testimony on three different occasions. On May 10, 1961, the Trial Judge filed his decree granting to the appellant a legal separation from the respondent upon the ground that his conduct with another woman was such that the appellant could no longer tolerate such and continue to live with him as his wife. He directed the respondent to pay to the appellant the sum of

$500.00 per month for her life or until further order of the Court for her support and maintenance. He also directed the respondent to pay over to the appellant in a lump sum, tax free, of $75,000.00 in cash or in securities. He likewise ordered the respondent to pay appellant's attorneys' fees, and the costs of the action. The counterclaim of the respondent, seeking a divorce on the ground of desertion, was dismissed by Judge Montgomery.

The husband, in accordance with the statute setting up the Juvenile, Domestic Relations and Special Court of Kershaw County, appealed to the Court of Common Pleas. By his exceptions, the respondent challenged the correctness of the findings made by Judge Montgomery, and particularly the propriety of awarding lump sum alimony and the amount thereof. The appeal was heard by the Honorable James Hugh McFaddin, Judge of the Third Circuit, because of the disqualification of the Resident Judge of the Fifth Circuit. On February 15, 1962, Judge McFaddin issued an order in which he confirmed the decree of Judge Montgomery in all respects, except that his order denied the appellant the right to the lump sum award of $75,000.00. From that order both parties to this action served timely notices of appeal to this Court. However, the respondent has abandoned his appeal and is ready and willing to comply with the terms of the order of Judge McFaddin.

The appellant contends and characterizes her action against the respondent as one for a divorce *a mensa et thoro*. She further asserts that the lower Court had authority under Sections 20-113 and 20-113.1 of the Code to grant her alimony in a lump sum. We will consider this appeal upon the basis as contended for by the appellant and assume that her action was one for a divorce *a mensa et thoro*. The further question arises as to whether or not the Court had authority to award permanent alimony in periodic monthly payments of $500.00 and also to make a lump sum award of $75,000.00.

A divorce *a mensa et thoro* may be defined as a judicial decree which terminates the obligation and right of cohabitation but does not affect the status of the parties as married persons or dissolve the marriage. When a divorce *a mensa et thoro* is decreed there is no severance of the marriage bond. The marital status is not affected thereby; and the parties remain husband and wife, though authorized by the decree to live in separation. In the case of a divorce *a mensa et thoro,* the door of reconciliation is held open in the hope that the parties may, without a severance of the marriage bond ever having taken place, become reconciled to each other and resume their normal marital relations.

It is the position of the appellant that the allowance of alimony in a lump sum, or in gross, in an action for a divorce *a mensa et thoro* is authorized by Sections 20-113 and 20-113.1 of the 1952 Code of Laws.

Section 20-113 of the Code authorizes the Court to grant alimony in actions for divorce *a vinculo matrimonii* and provides that:

"In any award of permanent alimony, the court shall have jurisdiction to order periodic payments or payment in a lump sum."

Section 20-113.1 of the Code provides that:

"In all actions for divorce *a mensa et thoro,* allowances of alimony and suit money and allowances of alimony and suit money *pendente lite* shall be made according to the principles controlling such allowance in actions for divorce *a vinculo matrimonii.*"

It is thus apparent that the statutory power of the court concerning the allowance of permanent alimony is the same in decreeing a divorce *a mensa et thoro* as it is in decreeing a divorce *a vinculo matrimonii.*

The statute authorizes the Court, in making an award of permanent alimony, to order "periodic payments or payment in a lump sum." Can this statute be interpreted to

authorize the awarding of permanent alimony in periodic monthly payments *and* also in a lump sum?

All rules of statutory construction are servient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used which must be construed in the light of the intended purpose. *Bohlen et al. v. Allen et al.,* 228 S. C. 135, 89 S. E. (2d) 99. One of the primary rules in the construction of a statute is that the words used therein should be taken in their ordinary and popular signification unless there is something in the statute requiring a different interpretation. This is really nothing more than a rule of common sense, for it must be supposed that the legislature, in enacting a statute, intended that the words used therein should be understood in the sense in which they are ordinarily and popularly understood by the people, for whose guidance and government the law was enacted, unless there is something in the statute showing the words in question were used in some other sense. *Field v. Gregory et al.,* 230 S. C. 39, 94 S. E. (2d) 15.

It is to be noted that the statute provides for alimony in periodic payments *or* payment in a lump sum. The word "or" used in a statute, is a disjunctive particle that marks an alternative. *Ohio Fuel Supply Co. v. Paxton,* D. C., 1 F. (2d) 662. The word "or" used in a statute imports choice between two alternatives and as ordinarily used, means one or the other of two, but not both. *Marshall Field & Co. v. Freed,* 191 Ill. App. 619; *White v. Atchison T. & S. F. Ry. Co.,* 125 Kan. 537, 265 P. 73, 59 A. L. R. 749; *Swift & Co. v. Bonvillain,* 139 La. 558, 71 So. 849.

In *Huckabee Transport Corporation v. Western Assurance Co.,* 238 S. C. 565, 121 S. E. (2d) 105, this Court said:

"* * * The word 'or' as it is used in the insuring agreement, is a co-ordinating conjunction introducing an alternative, *Bordelon v. National Life & Accident. Ins. Co.,* La.

App., 187 So. 112; *Erie R. Co. v. American Auto Ins. Co.,* 36 N. J. Super. 159, 114 A. (2d) 873. In *Houge v. Ford,* 44 Cal. (2d) 706, 285 P. (2d) 257, it was held that the function of the word 'or' in a contract is to mark an alternative such as 'either this or that.' "

In the case of *In re Cow Castle Drainage Dist. (Berry et al. v. Ammons et al.)*, 107 S. C. 310, 92 S. E. 1036, we find the following:

"Turning, then, to the fourth exception, it is true that the word 'or' is sometimes construed by the Courts to mean 'and,' and the reverse of that. That construction has oftenest been made in the consideration of wills and written contracts, but well-nigh always in instances where the instrument construed was of doubtful meaning on the face of it, and generally to get at the intent of the maker of the instrument evidenced from all of the parts of it. The rule of construction in such instances is well stated by Johnston, Ch., in *Shands v. Rogers,* 28 S. C. Eq. (7 Rich. Eq.) 425. Statutes, too, are sometimes so construed, but not where the language of them is plain.

" 'It is not permitted to interpret what has no need of interpretation. When an act is expressed in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason not to adopt the sense which it naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it is to elude it.' Potters-Dwarris, p. 143 ."

"Or" generally indicates an alternative corresponding to "either", as "either this or that"; that is to say either one or another. *Shepard v. City of New Orleans,* 51 La. Ann. 847, 25 So. 542; *Kuehner v. City of Freeport,* 143 Ill. 92, 32 N. E. 372, 17 L. R. A. 774.

> We think that it was the intention of the Legislature to authorize the courts to award alimony in periodic payments or in a lump sum, but not both.

In 27A C. J. S. Divorce § 235, at pages 1077-1078, we find the following:

"Under some statutes, the award may involve a combination of alimony in gross and periodic payments, and need not be confined to one mode or the other; but under other statutes it has been held that an award of permanent alimony in a gross sum precludes the allowance of periodic payments in addition thereto. Certainly, an award of installment alimony which is adequate precludes an additional award of alimony in gross for support. The allowance of periodical payments to a wife for the support and maintenance of a child does not preclude an award to her of alimony in gross.

\* \* \*

"Where an award of alimony or allowance may be either in gross or by periodic payments, it has been said that ordinarily the better method of awarding alimony is by periodic payments or an annual allowance payable at such intervals as may best suit the convenience of the husband and meet the demands of the wife, to the end that the court may retain its power to modify the alimony provision as circumstances may warrant in the interest of justice to both parties, as, for example, in the case of the possible termination by death or remarriage of the right of a divorced wife to claim support; and it has been held that a lump sum should not be awarded except where special equities exist, or there is an impelling reason for its necessity or desirability."

The case of *Deigaard v. Deigaard,* Fla. App., 114 So. (2d) 516, was one for a divorce. The decree of the Trial Judge contained a provision for the payment to the wife of $75.00 per week as support and maintenance, together with, among other provisions, a lump sum of $5,000.00 as post demise alimony in the event of the husband's death prior to the remarriage or death of the wife. The Florida Court reversed the decree of the lower Court on the ground that under the Florida Statute, Section 65.08, Fla. Stat., F. S. A., wherein *inter alia,* it was provided that "[i]n any award of

permanent alimony the court shall have jurisdiction to order periodic payments or payment in a lump sum", there was no authority to award both periodic payments and lump sum alimony.

In the case of *Harrison v. Harrison,* Fla. App., 115 So. (2d) 709, a divorce was granted and the decree of the Trial Judge provided for the transfer to the wife of one-half interest in the residence belonging to the husband and the payment of alimony in installments. The Florida Court reversed, saying:

"In thus awarding to the wife a half interest in the residence owned by the husband, in addition to ordering payment of alimony in installments, the learned chancellor was in error. It has been held that where a divorce decree provides for the payment of permanent alimony in periodic installments, a lump sum award of alimony may not be added. See § 65.08, Fla. Stat., F. S. A.; *Yandell v. Yandell,* Fla. 1949, 39 So. (2d) 554; *Deigaard v. Deigaard,* Fla. App. 1959, 114 So. (2d) 516. There was no basis, other than as lump sum alimony, for awarding the wife an interest in this property, which was owned by the husband prior to the marriage of the parties. The wife held no record interest. She did not allege or prove any contribution or equity in the property, such as could have supported an award to her of an interest therein. See *Heath v. Heath,* 103 Fla. 1071, 138 So. 796, 82 A. L. R. 537; *Benson v. Benson,* Fla. App. 1958, 102 So. (2d) 748, 753; *Wood v. Wood,* Fla. App. 1958, 104 So. (2d) 879."

The Florida statute above quoted is identical with our statute with reference to making an award of permanent alimony in periodic payments or payment in a lump sum. The Florida Courts, in the two cases above cited, held that where a divorce decree provides for the payment of permanent alimony in periodic installments, a lump sum award of alimony may not be added thereto. We conclude that, under our statute, an award of alimony in periodic installments precludes an additional award of alimony in gross.

We think the Trial Judge correctly held that the appellant was entitled to alimony in periodic payments but was not entitled to a lump sum award in addition thereto.

Affirmed.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., concur in result.

BUSSEY, Justice (concuring in result).

I concur in the decision that the judgment of the circuit court should be affirmed, but find myself completely unable to agree with the basis of the decision set forth in the majority opinion prepared by Mr. Justice Moss.

The circuit court held that the present action was (certainly in view of the status of the record when it was before the circuit court) an "action for separate support and maintenance", which was entirely different from "a divorce *a mensa et thoro*", and affirmed the award of the trial court for periodic payments to the appellant wife, but reversed the award for a lump sum payment on the authority of the case of *Matheson v. McCormac,* 186 S. C. 93, 195 S. E. 122, wherein it was held that lump sum awards of alimony in actions for separate support and maintenance were not favored and in the absence of express statutory authority would not be awarded, except when consented to or under exceptional circumstances. Of course, a lump sum award was approved in the *Matheson case,* but here the circuit court held, in effect, that there was in this case neither any consent nor exceptional circumstances such as justified and supported the award in the *Matheson case.* I think the circuit judge, in arriving at his decision, correctly applied the law of South Carolina to the record before him and arrived at the correct result.

The basis of his decision being correct, the decision should be affirmed on the principles of law which the circuit judge correctly applied, and we need no other basis for affirmance.

The petition of the appellant alleged adultery on the part of the respondent, but did not ask for a divorce of any kind, and the trial court found that the charge of adultery had not been proved, but that the respondent had been guilty of conduct which under the law of this state would justify the appellant leaving the marital home and entitle her to separate support and maintenance.

The order of the trial court then proceeded to grant the appellant "a legal separation" and ordered the respondent to make periodic payments, as well as a lump sum payment, to the appellant, without characterizing such payments as either "alimony" or "separate support and maintenance."

In the case of *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629, it was said, "There is no statute in this state undertaking to fix the grounds for separate maintenance and support. This is left to the broad discretion of a court of equity", and it was held that even in a divorce action wherein a divorce was denied separate support and maintenance would be decreed if the evidence showed that the complaining wife was entitled thereto. In the instant case, regardless of the nomenclature used, or omitted, the evidence and findings of fact by the trial court entitled the appellant to an award for "separate support and maintenance" and any proper order incident thereto, nothing more.

The appeal here is based primarily on the contention that the circuit judge was in error in holding this action to be simply an action for "separate support and maintenance", it being contended that it is rather an action for a "divorce *a mensa et thoro",* which appellant contends was recognized by our courts throughout the period when an absolute divorce was not allowed under our Constitution. Before proceeding to discuss this contention, it should be pointed out that the appellant here failed to prove before the trial court any ground which would have entitled her to a divorce *a vinculo matrimonii* by virtue of Article XVII, Section 3 of the Constitution as amended in 1949, and the statute law enacted

pursuant to said constitutional amendment. This being the case, we are not here concerned with the question of whether, or under what circumstances, a divorce *a mensa et thoro* can be granted upon proof of facts which would entitle the complaining party to a divorce *a vinculo matrimonii*. In other words, the issues here involved are governed by the law of this state totally independent of the constitutional provision and the statute authorizing the granting of divorces *a vinculo matrimonii.*

To return to the primary contention of the appellant, it is, in my opinion, totally unsound and is based upon what seems to me to be a rather wide-spread erroneous impression to the effect that "divorces *a mensa et thoro*" were in fact traditionally recognized by our courts independently of any statutory or constitutional provision. This erroneous impression has risen, I think, probably from a somewhat indiscriminate and interchangeable use of the terms "divorce *a mensa et thoro*", "separate support and maintenance", and "legal separation", without due regard for the real meaning of such terms. On more than one occasion, this erroneous impression has been contributed to by dicta in the opinions of this court. No case is cited by appellant in support of the contention that divorces *a mensa et thoro* were in fact recognized by our courts throughout our period of constitutional denial of an absolute divorce, and there are many decisions of this court to the contrary, as will hereinafter be pointed out.

The trial court here granted "a legal separation". I have been unable to find in any law dictionary, opinion, or treatise any concrete or specific definition of the term "legal separation". A reading of many cases had led me to the conclusion that the term is a generic one, without any specific definition, which is rather loosely applied to various situations where the husband and wife are living apart, at least temporarily, under some sanction of contract or law. The term is, hence, applied to even an absolute divorce, as well as to a situation where a wife is temporarily living apart

from her husband and being supported under a decree of separate support and maintenance.

From early days, courts of equity in this state have, in proper cases, ordered separate support and maintenance, but whenever the issue has been squarely raised, have declared that no court in this state had the power to grant a divorce *a mensa et thoro,* which is defined in Black's Law Dictionary, page 602, as follows:

"A divorce from table and bed, or from bed and board. A partial or qualified divorce by which the parties are *separated and forbidden* to live or cohabit together, without affecting the marriage." (Emphasis added.)

"Separate maintenance proceedings are distinguished not only from a proceeding for an absolute divorce, but also from a proceeding for a divorce *a mensa et thoro* since an action for separate maintenance does not expressly or necessarily authorize the wife to live apart from her husband, while under a decree of limited divorce the refusal of the wife to cohabit with her husband is sanctioned and authorized." 17 Am. Jur. 256, Section 4.

There are, I think, other definite distinctions between the two proceedings, but in any event, in an unbroken line of decisions from *Jelineau v. Jelineau,* 2 Desaus. Eq. 45 (1801), to *Ex parte Jeter,* 193 S. C. 278, 8 S. E. (2d) 490 (1940), the appellate courts of this state have consistently recognized a definite distinction between these proceedings, whenever and wherever such distinction was germane, and decreed separate support and maintenance in proper cases, but at the same time held that the court had no power or authority to grant a divorce *a mensa et thoro.*

In the *Jelineau case,* wherein separate support and maintenance was awarded to the wife, it was contended by the husband that separate maintenance could not be awarded in the absence of a divorce *a mensa et thoro,* citing certain English cases in support of that contention. The opinion says with respect to that contention:

"It may be very good law in that country because there ecclesiastical courts have competent jurisdiction to grant a divorce *a mensa et thoro;* but in this country, at least in this state, there is no such court. Those cases, therefore, are by no means applicable to our situation."

In the case of Anonymous, 2 Desaus. Eq. 198 (1803), the court said:

"Such conduct of the husband, being proved, terminates in a decree in the ecclesiastical court for a divorce *a mensa et thoro,* and an allowance of alimony; or in this court a separate maintenance during the separation only; for this court has no right to decree a perpetual separation."

In *Taylor v. Taylor,* 4 Desaus. Eq. 167 (1811), the court said that the facts there would authorize ecclesiastical courts pronouncing a divorce *a mensa et thoro,* but then said:

"Will this court proceed to pronounce a divorce between the parties and separate them forever? This court will pronounce no divorce; but after such repeated outrageous conduct on the part of the defendant, it will endeavor to provide for the security and maintenance of the wife, until both parties may be somewhat cooled, and she may return with some kind of safety to her husband."

The case of *Rhame v. Rhame,* 1 McCord. Eq. 197 (1826) reaffirmed the proposition that the courts of this state had the power to award alimony but not the power to grant divorces of any kind.

In *Converse v. Converse,* 9 Rich. Eq. 535 (1856), the court said:

"The ecclesiastical court of England has the power of decreeing a separation *a mensa et thoro,* but the court of equity has no such jurisdiction. A jurisdiction of this kind appertains to no court in South Carolina. Under the circumstances of this case, the court might go so far (if necessary) as to protect the wife from the cruelty of the husband."

In *Ex parte Jeter,* 193 S. C. 278, 8 S. E. (2d) 490 (1940), the issue was whether the court had the power to modify a particular decree for separate support and maintenance on the basis of an alleged change of circumstances. In deciding the basic question the court said:

"The question, whether in those states permitting divorce there is a difference between divorce *a mensa et thoro* and a divorce *a vinculo matrimonii* as to the right of the Court to modify decrees fixing alimony, has *no application in this State as divorce of neither kind is permitted and alimony is allowed upon legal separation.*" (Emphasis added.)

Here the author of the opinion was, no doubt, using the generic term "legal separation" as meaning an action for separate support and maintenance.

As above pointed out, dicta in some of the opinions of this court have contributed to the erroneous impression arising from the interchangeable use of the terms "divorce *a mensa et thoro*" and "separate support and maintenance", without any regard to the distinction between the terms.

Among these cases is *McCreery v. Davis,* 44 S. C. 195, 22 S. E. 178, 28 L. R. A. 655 (1895). In that opinion there is the following language:

"* * * we admit that there is no power in any court in South Carolina to grant any divorce other than *a mensa et thoro.*"

The point at issue, however, was whether this court was required to accord full faith and credit to a divorce *a vinculo matrimonii* granted in the State of Illinois, and the power of a South Carolina court to grant a divorce *a mensa et thoro* was not at issue or decided, rendering the statement pure dicta. It appears likely that the author of the opinion merely used the term *"a mensa et thoro",* (as has often been done), meaning separate support and maintenance, without stopping to think of the distinction between the terms.

Appellant further contends that the enactment of Section 20-113.1 of the Code, which provides that in actions for

divorce *a mensa et thoro* the principles controlling the allowance of alimony in actions for divorce *a vinculo matrimonii* shall govern, changed the rule in *Matheson v. McCormac, supra.* I do not think this argument is at all sound. There is a well established rule applicable to statutes on a wide variety of subjects that, aside from legislative declarations to the contrary, statutes in derogation of the common law are to be strictly construed and legislation creating a liability where no liability existed at common law, should be construed most favorably to the person or entity subjected to the liability, and against the claimant. 50 Am. Jur. 425, Statutes, Sec. 402. *Smith v. Boyer,* 119 S. C. 176, 112 S. E. 71, 41 A. L. R. 1466; *Beaty v. Richardson,* 56 S. C. 173, 34 S. E. 73, 46 L. R. A. 517; *Columbia Real Estate & Trust Co. v. Royal Exchange Assurance,* 132 S. C. 427, 128 S. E. 865. Under the facts of this case, no liability for a lump sum award of alimony existed either under the common law of England or the decisions of the courts of this state.

"It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention." *Town of Forest Acres v. Seigler,* 224 S. C. 166, 77 S. E. (2d) 900.

"The legislature in the enactment of a statute will not be presumed to intend to overturn long established principles, unless such intention is made clearly to appear by express declaration or by necessary implication. To the contrary, the legislature will be presumed not to intend to overturn the long established principles of law, and the statute will be so construed, unless an intention to do so plainly appears by express declaration or necessary or unmistakable implication, and the language employed admits of no other reasonable construction." 50 Am. Jur. 333, Section 340.

Moreover, the language of the statute under discussion is not sufficient to create a cause of action which did not theretofore exist. In the case of *Grant v. Grant,* 12 S. C. 29, it was held that no remedy is complete without a definition of the cases to which it shall extend, and that a mere grant of

judicial power even in the Constitution did not, without more, create a cause of action.

The circuit judge having correctly decided the issues, his order should be affirmed. I disagree, however, with the basis of the decision in Mr. Justice Moss' opinion for two important reasons, as follows:

1. It assumes, I think incorrectly, that the action here is, as claimed by the appellant, one for a divorce *a mensa et thoro,* and at least by implication serves to perpetuate current erroneous impressions with respect to the law of this state insofar as divorce *a mensa et thoro* is concerned.

2. It bases the decision of this court on the construction of certain statutes, which in my view have absolutely no application to the controversy here, and moreover, I think the construction arrived at is at least open to grave question, if not entirely incorrect.

With respect to the first point of disagreement, it seems to me that no useful purpose can be served by discussing the principles of law applicable to a cause of action which does not exist in this state, at least under the facts here proved. I fear that doing so, particularly in view of dicta in prior decisions, might contribute to the eventual recognition of a cause of action, created by judicial implication and dicta, which does not exist, either by virtue of the common law or any legislative enactment, in this state.

Prior to the English Divorce Act of 1857, divorces of any kind were within the cognizance of the ecclesiastical courts. The English law concerning divorces and causes of divorces, as it existed prior to the American Revolution, was the ecclesiastical law and not the common law. Divorces in the United States, both *a vinculo matrimonii* and *a mensa et thoro,* are creatures of statute, except, of course, in South Carolina where the subject of divorce has been governed by the Constitution as well as by statute. The ecclesiastical law of England with respect to divorce and causes of divorce has never been recognized as a part of our common law,

except in Virginia and possibly one other jurisdiction, although legislatures in drafting statutes and courts have looked closely at the rules which obtained in the ecclesiastical courts of England. See generally 17 Am. Jur. 256, 257, Divorce and Separation, Sections 5 and 6.

As will be seen by reference to 17 Am. Jur. 255, Divorce and Separation, Section 2, and 17A Am. Jur. 69, Divorce and Separation, Section 880, the statutes of the various states authorizing a limited divorce, also called a divorce *a mensa et thoro,* and the consequences thereof, vary from state to state. In some jurisdictions it is even held that a reconciliation and resumption of cohabitation have no effect upon the judgment and that if the parties desire a termination of the judgment, they should make a joint application to the court for an order of termination.

We have consistently left to the broad discretion of a court of equity the grounds upon which separate support and maintenance may be decreed, and properly so, because a decree of support and maintenance within the contemplation of law and equity is strictly temporary with the ever present hope that the parties will become reconciled, making such a decree no longer necessary or effective. The nature of a divorce *a mensa et thoro* being more drastic, and complete or final, we should not by judicial implication contribute to the recognition of such a cause of action in the absence of legislation setting forth the grounds therefor and the consequences thereof.

With respect to the second point of disagreement as to the basis of decision, since we are here concerned with neither a cause of action for a divorce *a mensa et thoro,* nor a divorce *a vinculo matrimonii,* I think it unnecessary, improper and unwise for us to attempt herein to construe Sections 20-113 and 20-113.1 of the Code, and decide, what is here the purely academic question, whether the court, in a case governed by either of those sections, may allow alimony partly by way of periodic payments and partly by way of a lump sum payment.

In 50 Am. Jur. 198, Statutes, Section 219, we find the following:

"* * * in accordance with the general rule that the province of the court is to decide real controversies and not to discuss or give opinions on abstract propositions or moot questions, a court will not construe provisions of a statute other than those involved in the case before it."

In 14 Am. Jur. 277, Courts, Section 49, we find the following:

"The province of a court is to decide real controversies, not to discuss or give opinions on abstract propositions or moot questions. * * * Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention, as the courts deal with cases upon the basis of facts disclosed, never with nonexistent or assumed circumstances."

A long line of cases of this court collected in 3 West's South Carolina Digest, Appeal and Error, § 843, support the foregoing general principles of law and the proposition that this court will not and should not pass upon matters not necessary to a decision.

They being inapplicable, I shall not myself undertake to construe these sections of the Code, except to say that there is a very grave question in my mind as to the correctness of the construction placed thereon in the majority opinion. This construction deals only with the meaning of the word "or", contained in the last sentence of Section 20-113, and completely overlooks any effect of another portion of the same section which is:

"In every judgment of divorce from the bonds of matrimony in a suit by the wife the court shall make such orders touching the maintenance, alimony and suit money of the wife or any allowance to be made to her and, if any, the security, to be given for the same, *as from the circumstances of the parties and the nature of the case may be fit, equitable and just.*" (Emphasis added.)

The majority opinion is most persuasive of the statutory construction arrived at, and there is some persuasive authority, found in Flordia decisions, supporting that construction. The weight of persuasive authority from other jurisdictions, however, appears to me to be to the contrary. In any event, it seems to me that the majority opinion does not deal with and leaves unanswered a most vital question.

Did the legislature, by the use of the word "or" in the last sentence of Section 20-113, intend to delimit the broad power, with respect to alimony, given in the body of the statute and say that under no circumstances could the court decree alimony partly by way of periodic payments and partly by way of a lump sum payment? Was it intended that the court could never do so even though under the circumstances of the parties and the nature of the case such allowance was totally fit, equitable and just, and the only possible way that the court could do justice to both parties? These questions, to my mind, are certainly vital enough and important enough to be left for decision in a case where the decision of such is germane.

BRAILSFORD, J., concurs.